B1 (Official Form 1 (04/13)

| United States Bankruptcy Court<br>District of Delaware | Voluntary Petition |
|---|---|
| Name of Debtor (if individual, enter Last, First, Middle):<br>UniTek Global Services, Inc. | Name of Joint Debtor (Spouse) (Last, First, Middle): |
| All Other Names used by the Debtor in the last 8 years<br>(include married, maiden, and trade names):<br>Berliner Communications, Inc.; Novo Networks, Inc. | All Other Names used by the Joint Debtor in the last 8 years<br>(include married, maiden, and trade names): |
| Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN<br>(if more than one, state all):<br>75-2233445 | Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN)/Complete EIN (if<br>more than one, state all): |
| Street Address of Debtor (No. and Street, City, and State):<br>1777 Sentry Parkway West<br>Gwynedd Hall, Suite 302<br>Blue Bell, Pennsylvania<br>ZIP CODE 19422 | Street Address of Joint Debtor (No. and Street, City, and State):<br>ZIP CODE |
| County of Residence or of the Principal Place of Business:<br>Montgomery | County of Residence or of the Principal Place of Business: |
| Mailing Address of Debtor (if different from street address):<br>ZIP CODE | Mailing Address of Joint Debtor (if different from street address):<br>ZIP CODE |
| Location of Principal Assets of Business Debtor (if different from street address above).<br>ZIP CODE | |

**Type of Debtor**
(Form of Organization)
(Check one box)

☐ Individual (includes Joint Debtors)
*See Exhibit D on page 2 of this form.*
☒ Corporation (includes LLC and LLP)
☐ Partnership
☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business**
(Check one box.)

☐ Health Care Business
☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51B)
☐ Railroad
☐ Stockbroker
☐ Commodity Broker
☐ Clearing Bank
☒ Other

**Chapter of Bankruptcy Code Under Which the Petition is Filed** (Check one box.)

☐ Chapter 7
☐ Chapter 9
☒ Chapter 11
☐ Chapter 12
☐ Chapter 13

☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding
☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding

**Chapter 15 Debtors**
Country of debtor's center of main interests:

Each country in which a foreign proceeding by, regarding or against debtor is pending

**Tax-Exempt Entity**
(Check box, if applicable.)

☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code)

**Nature of Debts**
(Check one box.)

☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose.
☒ Debts are primarily business debts.

**Filing Fee** (Check one box.)

☒ Full Filing Fee attached

☐ Filing Fee to be paid in installments (applicable to individuals only). Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.

☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B.

**Chapter 11 Debtors**
Check one box:
☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).
☒ Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).

Check if:
☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,490,925 *(amount subject to adjustment on 4/01/16 and every three years thereafter).*

--------------------------------------
Check all applicable boxes
☒ A plan is being filed with this petition.
☒ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

**Statistical/Administrative Information**
☒ Debtor estimates that funds will be available for distribution to unsecured creditors.
☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors.

THIS SPACE IS FOR COURT USE ONLY

Estimated Number of Creditors

| ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| 1-49 | 50-99 | 100-199 | 200-999 | 1,000-5,000 | 5,001-10,000 | 10,001-25,000 | 25,001-50,000 | 50,001-100,000 | Over 100,000 |

Estimated Assets

| ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

Estimated Liabilities

| ☐ | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ | ☐ | ☐ | ☐ |
|---|---|---|---|---|---|---|---|---|---|
| $0 to $50,000 | $50,001 to $100,000 | $100,001 to $500,000 | $500,001 to $1 million | $1,000,001 to $10 million | $10,000,001 to $50 million | $50,000,001 to $100 million | $100,000,001 to $500 million | $500,000,001 to $1 billion | More than $1 billion |

B1 (Official Form 1 (04/13)                                                                                                                Page 2

| **Voluntary Petition**<br>*(This page must be completed and filed in every case.)* | **Name of Debtor(s):**<br>UniTek Global Services, Inc. |
|---|---|

| **All Prior Bankruptcy Cases Filed Within Last 8 Years** If more than two, attach additional sheet.) | | |
|---|---|---|
| Location<br>Where Filed: | Case Number: | Date Filed: |
| Location<br>Where Filed: | Case Number: | Date Filed: |

| **Pending Bankruptcy Case Filed by any Spouse, Partner, or Affiliate of this Debtor** (If more than one, attach additional sheet.) | | |
|---|---|---|
| Name of Debtor:<br>**See Attachment 1** | Case Number: | Date Filed; |
| District: | Relationship: | Judge: |

| **Exhibit A** | **Exhibit B** |
|---|---|
| (To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.)<br><br><br>☒    Exhibit A is attached and made a part of this petition. | (To be completed if debtor is an individual<br>whose debts are primarily consumer debts.)<br><br>I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petition that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by 11 U.S.C. § 342(b).<br><br>X _____<br>       Signature of Attorney for Debtor(s)       (Date) |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐    Yes, and Exhibit C is attached and made a part of this petition.

☒    No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

     ☐    Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

     ☐    Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor – Venue**
(Check any applicable box.)

☒    Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

☐    There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐    Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes.)

☐    Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

                      _____<br>                      (Name of landlord that obtained judgment)

                      _____<br>                      (Address of landlord)

☐    Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐    Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐    Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)).

| B1 (Official Form 1 (04/13) | Page 3 |
|---|---|
| Voluntary Petition<br>*(This page must be completed and filed in every case.)* | Name of Debtor(s):<br>UniTek Global Services, Inc. |

## Signatures

| Signature(s) of Debtor(s) (Individual/Joint) | Signature of a Foreign Representative |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct.<br>[If petitioner is an individual whose debts are primarily consumer debts and has chosen to file under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title 11, United States Code, understand the relief available under each such chapter, and choose to proceed under chapter 7.<br>[If no attorney represents me and no bankruptcy petition preparer signs the petition] I have obtained and read the notice required by 11 U.S.C. § 342(b).<br><br>I request relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>   Signature of Debtor<br><br>X _____<br>   Signature of Joint Debtor<br><br>   _____<br>   Telephone Number (if not represented by attorney)<br><br>   _____<br>   Date | I declare under penalty of perjury that the information provided in this petition is true and correct, that I am the foreign representative of a debtor in a foreign proceeding, and that I am authorized to file this petition.<br><br>(Check only **one** box.)<br><br>☐  I request relief in accordance with chapter 15 of title 11, United States Code. Certified copies of the documents required by 11 U.S.C. § 1515 are attached.<br><br>☐  Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title 11 specified in this petition. A certified copy of the order granting recognition of the foreign main proceeding is attached.<br><br>X _____<br>   (Signature of Foreign Representative)<br><br>X _____<br>   (Printed Name of Foreign Representative)<br><br>   _____<br>   Date |

| Signature of Attorney* | Signature of Non-Attorney Bankruptcy Petition Preparer |
|---|---|
| X _____<br>   Signature of Attorney for Debtor(s)<br><br>   Robert S. Brady<br>   Printed Name of Attorney for Debtor(s)<br><br>   Firm Name<br>   YOUNG CONAWAY STARGATT & TAYLOR, LLP<br>   Rodney Square<br>   1000 N. King Street<br>   Wilmington, DE 19801<br>   (302) 571-6600<br><br>   November 3, 2014<br>   Date<br>*In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney has no knowledge after an inquiry that the information in the schedules is incorrect. | I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11 U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b), 110(h), and 342(b); and, (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C. § 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I have given the debtor notice of the maximum amount before preparing any document for filing for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19 is attached.<br><br>   _____<br>   Printed Name and title, if any, of Bankruptcy Preparer<br><br>   _____<br>   Social-Security number (If the bankruptcy petition preparer is not an individual, state the Social-Security number of the officer, principal, responsible person or partner of the bankruptcy petition preparer.) (Required by 11 U.S.C. § 110.) |

| Signature of Debtor (Corporation/Partnership) | |
|---|---|
| I declare under penalty of perjury that the information provided in this petition is true and correct, and that I have been authorized to file this petition on behalf of the debtor.<br><br>The debtor requests the relief in accordance with the chapter of title 11, United States Code, specified in this petition.<br><br>X _____<br>   Signature of Authorized Individual<br><br>   Andrew J. Herning<br>   Printed Name of Authorized Individual<br><br>   CFO<br>   Title<br><br>   November 3, 2014<br>   Date | Address<br>X _____<br>   Signature<br><br>   _____<br>   Date<br><br>Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner whose Social-Security number is provided above.<br><br>Names and Social-Security numbers of all other individuals who prepared or assisted in preparing this document unless the bankruptcy petition preparer is not an individual.<br><br>If more than one person prepared this document, attach additional sheets conforming to the appropriate official form for each person.<br><br>*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C. § 110; 18 U.S.C. § 156.* |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| UNITEK GLOBAL SERVICES, INC., a Delaware Corporation, *et al.*[1] | ) ) ) | Case No. 14-_____(___) |
|  | ) | (Joint Administration Requested) |
| Debtors. | ) ) | |

## EXHIBIT "A" TO VOLUNTARY PETITION OF UNITEK GLOBAL SERVICES, INC.

1.        UniTek Global Services, Inc.'s (the "Company") securities are registered under section 12 of the Securities Exchange Act of 1934; the SEC file number is 001-34867.

2.        The Company and its subsidiaries file consolidated financial statements with the Securities and Exchange Commission (the "SEC").  The following unaudited financial data refers to the Company's financial condition as of September 30, 2014 (except where otherwise noted):

| A. | Total assets | $3,222,372 |
|---|---|---|
| B. | Total debts | $186,053,032 |
| C. | Debt securities held by more than 500 holders | None |
| D. | Number of shares of common stock | 19,301,733 |

3.        Brief description of the Company's business:  UniTek Global Services, Inc. and its subsidiaries provide: (i) comprehensive installation and fulfillment services for satellite and broadband cable telecommunications companies; and (ii) wireless

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: UniTek Global Services, Inc. (3445), UniTek Holdings, Inc. (4120), UniTek Midco, Inc. (5642), UniTek Acquisition, Inc. (4123), Nex-link USA Communications, Inc. (9084), UniTek USA, LLC (0279), Pinnacle Wireless USA, Inc. (1746), DirectSAT USA, LLC (3465), FTS USA, LLC (6247), Advanced Communications USA, Inc. (0091).  For the avoidance of doubt, Wirecomm Systems (2008) Inc. (FKA UniTek Canada), an affiliate of the Debtors and wholly owned subsidiary of UniTek USA, LLC, is not a Debtor in the chapter 11 cases.  The Debtors' main corporate address is 1777 Sentry Parkway West, Gwynedd Hall, Suite 302, Blue Bell, Pennsylvania 19422.

telecommunication construction, project management and systems integration services for wireless telecommunication carriers, municipalities and related agencies.

4.    The following table is a list of the names of any person who, based upon information provided to the Company, directly or indirectly owns, controls, or holds with power to vote, 5% or more of the voting securities of the Company as of October 30, 2014:

- UniTek Interposed LP
- David Sandberg
- John Randall Waterfield
- Cetus Capital II, LLC
- Steven B. Klinsky

## Attachment 1 to Voluntary Petition

## Affiliated Entities

On the date hereof, each of the affiliated entities listed below (including the debtor in this chapter 11 case) filed in this Court a petition for relief under chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532. Contemporaneously with the filings of these petitions, such entities filed a motion requesting joint administration of their chapter 11 cases.

UniTek Global Services, Inc.
UniTek Holdings, Inc.
UniTek Midco, Inc.
UniTek Acquisition, Inc.
Nex-link USA Communications, Inc.
UniTek USA, LLC
Pinnacle Wireless USA, Inc.
DirectSAT USA, LLC
FTS USA, LLC
Advanced Communications USA, Inc.

## SECRETARY'S CERTIFICATE

I, Kathy M. McCarthy, hereby certify that I am the Senior Vice President, General Counsel and Corporate Secretary of UniTek Global Services, Inc., a Delaware corporation (the "Company"), and that, as such, I am authorized to execute and deliver this Secretary's Certificate on behalf of the Company, and do hereby further certify that attached hereto as **Exhibit A** is a true, correct and complete copy of the resolutions adopted by the Board of Directors of the Company authorizing certain matters in connection with the Company seeking relief under the provisions of Chapter 11 of title 11 of the United States Code. Such resolutions have not been revoked, modified, amended or rescinded since their adoption, are in full force and effect as of the date hereof, and are the only resolutions adopted by the Board of Directors of the Company with respect to the subject matter thereof.

IN WITNESS WHEREOF, I have executed this Secretary's Certificate on this _3_ day of November, 2014.

By: _____
Kathy M. McCarthy
Senior Vice President, General Counsel
and Corporate Secretary

EXHIBIT A

RESOLUTIONS

November __, 2014

Bankruptcy Resolutions

**WHEREAS**, it has been proposed that each of Unitek Global Services, Inc. (the "Company") and its direct and indirect subsidiaries listed on Schedule I attached hereto (collectively, the "Subsidiaries"), seek relief under the provisions of Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, it has also been proposed that the Company and the Subsidiaries negotiate and enter into a debtor-in-possession credit facility (the "DIP Credit Facility") substantially as described in the DIP Facility Term Sheet attached hereto as Schedule II (the "DIP Facility Term Sheet") subsequent to the filing of the Petition (as defined below) and in all respects subject to applicable bankruptcy court orders, by and among the Borrowers, lenders party thereto (the "Lenders") and Wilmington Trust, as Agent (each as defined therein), whereby, among other things, Lenders agree to make certain loans and advances and to provide other financial and credit accommodations to the Company and the Subsidiaries following the filing of the voluntary petitions under the Bankruptcy Code by each of the Company and the Subsidiaries;

**NOW, THEREFORE, BE IT RESOLVED**, that in the judgment of the Board of Directors or Managers, as the case may be, of the Company and of each Subsidiary (the "Board"), it is desirable and in the best interest of the Company and the Subsidiaries, its creditors, its equity holders and other interested parties, that the Company and the Subsidiaries be, and they hereby are, authorized, empowered, and directed to file or cause to be filed in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), at such time as it is deemed necessary by the appropriate officers of the Company, voluntary petitions for relief under Chapter 11 of the Bankruptcy Code (the "Petition") and all other documents, papers and pleadings necessary or appropriate to effectuate the Petition and any and all other documents, papers and pleadings necessary or appropriate in connection with the Chapter 11 cases of the Company and the Subsidiaries; and

**FURTHER RESOLVED**, that the Chief Executive Officer; Chief Financial Officer; Senior Vice President, General Counsel and Corporate Secretary; or Assistant Secretary of the Company (each, an "Authorized Officer", and collectively, the "Authorized Officers") be, and each of them, with full authority to act without the others, hereby is, authorized, empowered, and directed (i) to execute and verify the Petition and any other documents, papers and pleadings necessary or appropriate to effectuate the Petition and any and all    other

documents, papers and pleadings necessary or appropriate in connection with the Chapter 11 cases of the Company and the Subsidiaries and to cause the Petition and any other documents, papers and pleadings necessary or appropriate to effectuate the Petition and any and all other documents, papers and pleadings necessary or appropriate in connection with the Chapter 11 cases of the Company and the Subsidiaries to be filed with the Bankruptcy Court and (ii) to perform any and all such acts as are reasonable, advisable, expedient, convenient, proper, or necessary, in the discretion of the Authorized Officers, to effect any of the foregoing; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized, empowered, and directed, on behalf of and in the name of the Company, to execute, verify and file or cause to be filed all petitions, schedules, lists, motions, objections, responses, applications, and other papers and documents necessary or desirable in connection with the Chapter 11 cases of the Company and the Subsidiaries; and

**FURTHER RESOLVED**, that the Company, as debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code, is authorized to incur post-petition indebtedness under the DIP Credit Facility substantially as described in the DIP Facility Term Sheet; and

**FURTHER RESOLVED**, that the Authorized Officers be, and each of them, with full authority to act without the others, hereby is, authorized, empowered, and directed to execute, deliver a credit and security agreement and such other loan documents as shall be necessary or desirable in connection with the DIP Credit Facility (the "Loan Documents"), and perform all obligations thereunder, in the name and on behalf of the Company, which agreements and documents shall be in such form and with such terms and provisions as any such Authorized Officer or Authorized Officers shall approve, such Authorized Officer's or Authorized Officers' delivery thereof to be conclusive evidence of such approval and approval of the Board; and

**FURTHER RESOLVED**, that the Company and the Subsidiaries be, and they hereby are, authorized, empowered, and directed to perform their obligations under the Loan Documents including, without limitation, the granting of liens on all of their assets and obligations in respect of the joint and several liability of the Company with the other Borrowers thereunder (and any and all prior grants are hereby reaffirmed in all respects) and paying such fees or amounts as are required under the Loan Documents and any fee letter(s); and

**FURTHER RESOLVED**, that the Authorized Officers be, and each of them, with full authority to act without the others, hereby is, authorized, empowered and directed to prepare, execute and deliver, in the name and on behalf of the Company and the Subsidiaries, such documents, letters, certificates, and other

written instruments as may be necessary or appropriate in connection with the Company's and the Subsidiaries' execution, delivery, and performance of the Loan Documents and any other documents related thereto or described therein; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain the law firms of Morgan, Lewis & Bockius LLP ("Morgan Lewis") and Young Conaway Stargatt & Taylor, LLP ("Young Conaway") as bankruptcy counsel to render legal services to, and to represent, the Company and the Subsidiaries in connection with such proceedings and all other related matters in connection therewith, on such terms as the Authorized Officers, and such other officers as they shall from time to time designate shall approve; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain the firm of Epiq Bankruptcy Solutions, LLC ("Epiq") as notice and claims agent and administrative advisor to represent and assist the Company and the Subsidiaries in carrying out their duties under the Bankruptcy Code, and to take any and all actions to advance the Company's and the Subsidiaries' rights and obligations in connection with such proceedings and all other related matters in connection therewith, on such terms as the Authorized Officers, and such other officers as they shall from time to time designate shall approve; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain Miller Buckfire & Co., LLC ("Miller Buckfire") and Protiviti Inc. ("Protiviti" and together with Morgan Lewis, Young Conaway, Epiq and Miller Buckfire, the "Professionals") to render financial and restructuring advice and services to, and to represent, the Company and the Subsidiaries in connection with such proceedings and all other related matters in connection therewith, on such terms as the Authorized Officers, and such other officers as they shall from time to time designate shall approve; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to retain on behalf of the Company and the Subsidiaries any additional counsel, accountants, and other advisors as the Authorized Officers, or any of them, may deem appropriate; and

**FURTHER RESOLVED**, that the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized and directed to take or cause to be taken any and all such further actions and to execute and deliver any and all such further instruments and

documents and to pay all such expenses, costs, fees, or taxes, in each case, as in his or their judgment shall be necessary or desirable in order fully to carry out the intent and accomplish the purposes of the resolutions adopted herein; and

**FURTHER RESOLVED**, that all acts lawfully done or actions lawfully taken by any director or officer of the Company and the Subsidiaries or any of the Professionals in connection with the Loan Documents, the reorganization or liquidation of the Company and the Subsidiaries or any matter related thereto, or by virtue of these resolutions be, and they hereby are, in all respects ratified, confirmed and approved; and

**FURTHER RESOLVED**, the Authorized Officers, and such other officers as they shall from time to time designate, be, and each of them acting alone hereby is, authorized with full power of delegations, for and in the name and on behalf of the Company and the Subsidiaries, to amend, supplement, or otherwise modify from time to time the terms of any documents, certificates, instruments, agreements, or other writings referred to in the foregoing resolutions; and

**FURTHER RESOLVED**, that any and all actions of any officer or director of the Company and the Subsidiaries taken prior to the date hereof to carry out the purposes of the foregoing resolutions be, and they hereby are, ratified, approved, and confirmed in all respects.

## General Resolutions

**FURTHER RESOLVED**, that the officers of the Company and the Subsidiaries be, and each of them hereby is, authorized and empowered, in the name and on behalf of the Company and the Subsidiaries, to make all such arrangements, to do and perform all such acts and things, and to execute and deliver all such officers' certificates and such other instruments and documents as they may deem appropriate in order to effectuate fully the purpose and intent of each and all of the foregoing resolutions, and that any and all actions taken heretofore and hereafter to accomplish such purposes and intents, all or singular, be, and they hereby are, approved, ratified, and confirmed.

********

## SCHEDULE I

### Subsidiaries

UniTek Holdings, Inc.
UniTek Midco, Inc.
UniTek Acquisition, Inc.
Nex-link USA Communications, Inc.
UniTek USA, LLC
Pinnacle Wireless USA, Inc.
DirectSAT USA, LLC
FTS USA, LLC
Advanced Communications USA, Inc.

## SCHEDULE II

### DIP Facility Term Sheet

DB1/ 81127994.3

# UniTek Global Services, Inc.

## DIP FACILITY TERM SHEET

**This Term Sheet is provided as a basis for discussion, and is not intended to commit the DIP Lenders (as defined below) to any transaction. It is understood that prior to committing to any transaction contemplated herein, (i) the Borrowers, Apollo (as defined below) and the Specified Term Lenders (as defined in the Plan Term Sheet) will agree to the Budget (as defined below), and (ii) the parties will enter into mutually acceptable definitive documentation. This Term Sheet is intended to summarize the terms and provisions of such definitive documentation. To the extent there is any discrepancy between this Term Sheet and such definitive documentation, the terms and provisions of such definitive documentation will control. This Term Sheet is subject to qualifiers set forth in the Plan Term Sheet. Capitalized terms not otherwise defined herein shall have the meanings set forth in the Plan Term Sheet.**

| | |
|---|---|
| **Borrowers** | UniTek Global Services, Inc., UniTek Acquisition, Inc., Pinnacle Wireless USA, Inc., UniTek USA, LLC, Advanced Communications USA, Inc., DirectSat USA, LLC and FTS USA, LLC, as debtors and debtors-in-possession (the "Debtors" or "Borrowers") under chapter 11 of title 11 of the United States Bankruptcy Code (the "Bankruptcy Code") in jointly administered cases (collectively, the "Chapter 11 Cases") in such bankruptcy court as the Debtors may determine (the "Bankruptcy Court"). |
| **DIP Agent** | Apollo Investment Corporation ("Apollo"), as administrative agent, or a third party agent to be determined (in such capacity, the "DIP Agent") |
| **DIP Lenders** | Apollo or one or more of its affiliates, and each of their successors and assigns (collectively, the "Apollo DIP Lenders"); and each of the "Lenders" under the Term Credit Agreement that is a Specified Term Lender and any other participating lenders under the Term Credit Agreement, and each of their successors and assigns (collectively, the "Term Facility DIP Lenders"); (collectively, Apollo DIP Lenders and the Term Facility DIP Lenders are the "DIP Lenders"). Each "Lender" under the Term Credit Agreement that has executed and delivered a counterpart or joinder to the Plan Support Agreement prior to the conclusion of the prepetition solicitation period shall be entitled to subscribe to its ratable share of the Term Facility DIP Lenders' portion of the DIP Facility as of the DIP Closing Date (as defined below) pursuant to procedures approved by the Specified Term Lenders, and any unsubscribed portion shall be backstopped by the Specified Term Lenders on a ratable basis. |
| **DIP Facility** | A debtor in possession revolving credit facility (the "DIP Facility") consisting of (i) commitments to lend an aggregate principal amount of up to $43,000,000 as term advances that once borrowed and repaid may not be reborrowed (the "Initial Commitments"), (ii) revolving credit commitments of $10,000,000 for the purpose of providing liquidity for working capital and general corporate purposes of the DirectSat Business (the "Revolving Commitments"); (iii) a committed incremental facility to repay the ABL |

| | |
|---|---|
| | Agent any amount drawn under the $3.7 million letter of credit (the "WTC Letter of Credit") issued to secure certain obligations of the Other Business under ABL Credit Agreement, if and when such WTC Letter of Credit is drawn (the "L/C Commitment"; collectively, the Initial Commitments, the Revolving Commitments and the L/C Commitment are the "DIP Facility Commitments"); and (iv) a roll up of all outstanding letters of credit under the ABL Facility existing as of the Petition Date (the "L/C Roll Up"). The aggregate outstanding amount of the amounts borrowed under the Initial Commitments and the Revolving Commitments are collectively called "DIP Loans". The DIP Loans will be limited to an amount to be mutually agreed upon until entry of the Final Order (as defined below), which amount (the "Initial DIP Draw") may be fully funded on the closing date of the DIP Facility (the "DIP Closing Date").[1]<br><br>The Initial Commitments, the Revolving Commitments and the L/C Commitment shall each be allocated 50% to the Apollo DIP Lenders and 50% to the Term Facility DIP Lenders, with any drawings on account of such DIP Facility Commitments to be funded ratably by the DIP Lenders according to such commitments. The participation and reimbursement obligations with respect to the L/C Roll Up (other than the L/C Commitment) shall be exposure held only by the Apollo DIP Lenders. |
| **Use of Loans** | The DIP Facility will be used (a) to pay costs and expenses in connection with the DIP Facility and the Chapter 11 Cases, (b) to provide financing for working capital and other general corporate purposes of the Borrowers, including but not limited to investments in other subsidiaries of the Borrowers to the extent not prohibited under the definitive loan agreement for the DIP Facility (the "DIP Loan Agreement"), in each case in accordance with the Budget (as defined below), (c) in the case of DIP Loans borrowed under the Revolving Commitments, solely to fund operations and working capital and general corporate purposes of the DirectSat Business, (d) in the case of DIP Loans borrowed under the L/C Commitment, solely to pay the ABL Agent any amount drawn under the $3.7 million letter of credit issued to secure certain obligations of the Other Businesses under ABL Credit Agreement, if and when such letter of credit is drawn, and (e) in the case of DIP Loans borrowed under the Initial Commitments, to pre-fund an account maintained and held by the DirectSat Subsidiaries and the DirectSat Business in an amount of not less than $13.8 million (consisting of $8.0 million for corporate costs of the Other Business and $5.8 million for insurance costs of the Other Business, it being understood that such amount of such Initial Commitments shall not be permitted to be utilized for any other purpose) for the benefit of the Other Business. The proceeds of the DIP Facility and cash collateral shall be subject customary prohibitions on the use thereof, including that such amounts may not be used (i) to investigate or challenge the validity, perfection, priority, extent, or enforceability of the DIP Facility, or the liens or security interests securing the DIP Facility or to assert any claims against the DIP Agent or the DIP Lenders, or (ii) to investigate or challenge the validity, perfection, priority, |

---

[1] The limitations on the use of the Revolving Commitments is set forth above and in the "Use of Loans" below.

| | |
|---|---|
| | extent, or enforceability of the indebtedness under the Prepetition Secured Credit Agreements (as defined below), or the liens or security interests securing such indebtedness, or (iii) to assert any claims against the lenders or agents under (a) the ABL Credit Agreement or (b) the Term Loan Agreement (collectively the "Prepetition Secured Credit Agreements"), or (iv) to fund distributions to creditors. |
| **Fees** | (i) Upfront Fee: 1.0% of the total DIP Facility Commitments, earned on the date of entry of the Interim Order (as defined below) and due and payable on the closing date of the DIP Facility (the "DIP Closing Date"); <br><br> (ii) Extension Fee: 0.50% of the total DIP Facility Commitments, fully earned on the date of delivery of notice of an election to extend the maturity of the DIP Facility, and due and payable upon delivery of a notice of an election to exercise such extension; <br><br> (iii) Unused Commitment Fee: 0.5% per annum of the daily average unused portion of the DIP Facility Commitments, due and payable monthly in arrears and upon the maturity or termination of the DIP Facility; and <br><br> (iv) Agency Fee: to the DIP Agent, in its capacity as administrative agent under the DIP Loan Agreement, solely for its own account, a fee of $15,000 (except that if Apollo is not the DIP Agent, such fee shall be the administration fee of the relevant third party administrative agent), payable on the DIP Closing Date and on each anniversary thereof until termination of the DIP Facility. |
| **Interest Rates** | The interest rates under the DIP Facility will be the Eurodollar Rate (as defined in the ABL Credit Agreement) + 8.50% per annum, with 1.0% per annum of such amount payable in kind, or, at the Borrowers' election, the Alternate Base Rate (as defined in the ABL Credit Agreement) + 7.50% per annum, with 1.0% per annum of such amount payable in kind, payable monthly in arrears. To the extent the ABL Agent issues letters of credit under the Revolving Commitments, the initial letter of credit fees (excluding the fronting fee payable to the issuer thereof) payable to all lenders holding participations with respect to such letters of credit shall equal 8.00% per annum on the face amount of any such outstanding letters of credit, payable quarterly in arrears. Letter of credit fees and interest rates applicable to the L/C Rollup (and the unfunded WTC Letter of Credit) shall be the applicable pre-Petition Date rates as set forth in the ABL Credit Agreement. <br><br> The Borrowers may elect interest periods of 1 month for Eurodollar Rate borrowings. <br><br> The Eurodollar Rate floor shall be 1.0% per annum. <br><br> The interest rates payable with respect to obligations under the DIP Facility shall increase by 2.0% per annum during the existence of an event of default under the DIP Facility. |
| **Maturity** | All obligations under the DIP Facility, accrued or otherwise, shall be due and payable in full on the earliest of (i) January 21, 2015, provided that this |

| | |
|---|---|
| | date may be extended (a) for an additional 30 days upon delivery of a notice and payment of the Extension Fee in each case on or after January 11, 2015 but before January 15, 2015, and (b) for a further 30 days upon delivery of notice and the consent of Apollo and the Specified Term Lenders, in each case so long as no event of default under the DIP Facility has then occurred and is continuing; (ii) the effective date of a Chapter 11 plan of reorganization for the Borrowers; and (iii) the date on which maturity of the Loans is accelerated pursuant to the DIP Loan Agreement as a result of an event of default under the DIP Facility.<br><br>Notwithstanding the foregoing, as set forth in the Plan, upon the occurrence of the effective date of the Plan, each holder of a claim under the DIP Facility shall receive Tranche A New First Lien Debt in a face amount equal to the amount of such claim, and such holder shall thereupon be committed to fund the unfunded portion of its Revolving Commitment and L/C Commitment under the DIP Facility in accordance with the terms of the New First Lien Debt Term Sheet. |
| **Prepayments** | The Borrowers may optionally prepay amounts outstanding under the DIP Facility, together with accrued interest thereon.<br><br>Mandatory prepayments of the DIP Loans shall be required with net cash proceeds from asset sales outside the ordinary course of business, casualty or loss events and other events to be agreed, subject to baskets and reinvestment provisions to be mutually agreed upon. |
| **Collateral** | The DIP Facility will be secured by a priming, senior first-priority perfected lien, granted by the Debtors and approved by the Bankruptcy Court pursuant to section 364(c)(2) and 364(d) of the Bankruptcy Code in all present and after-acquired assets of the Debtors, including avoidance actions and any proceeds thereof (the "DIP Collateral"), subject only to the Carve-Out (as defined below), and all as provided in the Interim Order and the Final Order (the "DIP Liens"). The Specified Term Lenders and other Term Facility DIP Lenders will direct the agent under the Term Credit Agreement to consent to such priming. |
| **Priority and Liens; Carve-Out** | All obligations of the Borrowers under the DIP Facility at all times shall constitute allowed super-priority administrative expense claims in the Chapter 11 Cases (the "DIP Administrative Claim"), having priority over all administrative expenses of the kind specified in, or ordered pursuant to, sections 105, 326, 330, 331, 503(b), 506(c), 507(a), 507(b) or 726 or any other provisions of the Bankruptcy Code, subject only to a carve-out for (i) allowed, accrued, but unpaid professional fees, costs and expenses of the Borrowers (other than any "success" or similar fees payable to such professionals) to the extent provided for in the Budget, incurred at any time prior to DIP Agent's delivery of a Carve-Out Trigger Notice (as defined below), (ii) professional fees, costs and expenses of the Borrowers incurred at any time in the Chapter 11 Cases after delivery of a Carve-Out Trigger Notice not to exceed $250,000 and (iii) the payment of fees and expenses pursuant to 28 U.S.C. § 1930 (collectively, the "Carve-Out"). The Carve-Out and any DIP Loans may not be used to investigate or challenge the validity, perfection, priority, extent, or enforceability of the DIP Facility or |

| | |
|---|---|
| | the indebtedness under the Prepetition Secured Credit Agreements, or the liens or security interests securing the DIP Facility or the indebtedness under the <u>Prepetition Secured Credit Agreements</u>, or assert any claims against the lenders or agents under the Prepetition Secured Credit Agreements. "Carve-Out Trigger Notice" means written notice to the Borrowers that the Carve-Out is invoked, which notice shall be delivered only after the occurrence and during the continuation of an event of default (including with respect to any applicable grace periods) under the DIP Facility. |
| **Adequate Protection** | The agent and the lenders under the ABL Credit Agreement (the "<u>Prepetition ABL Lenders</u>") shall receive valid, binding, enforceable and perfected replacement liens upon and security interests in the DIP Collateral (the "<u>Prepetition ABL Replacement Lien</u>"). The Prepetition ABL Replacement Lien shall (i) be junior and subordinate only to the Carve-Out and the liens and security interests granted to the DIP Agent (the "<u>DIP Liens</u>"), and (ii) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (other than the Term Debt Priority Collateral (as defined in the existing intercreditor agreement between the creditors under the ABL Credit Agreement and the Term Loan Agreement, herein (the "<u>Intercreditor Agreement</u>")) and the Prepetition Term Loan Replacement Liens (defined below) on collateral consisting of Term Debt Priority Collateral) and (iii) be subject in all respects to the Intercreditor Agreement. For avoidance of doubt, the Prepetition ABL Replacement Lien on Term Debt Priority Collateral shall be junior to the prepetition liens of the Term Agent (as defined below) and the Prepetition Term Loan Replacement Lien thereon. As further adequate protection, (1) the Borrowers shall pay, from the Initial DIP Draw and on the date of the Initial DIP Draw, the outstanding prepetition fees and expenses of counsel to the Prepetition ABL Lenders and the ABL Agent and, following the Petition Date, shall, on a monthly basis, pay the accrued fees and expenses of counsel to the Prepetition ABL Lenders and the ABL Agent with any remaining unpaid postpetition fees or expenses paid on the effective date of the Plan, and (2) Prepetition ABL Lenders (including the holders of the "Last Out Loans" under, and as defined in the ABL Credit Agreement) shall also be entitled to payment of interest and fees (in each case, at the applicable non-default rate) due under the ABL Credit Agreement, at the times specified therein (and subject to the limitations therein on the portion of such interest payable in cash on such Last Out Loans), and notwithstanding anything to the contrary in the existing subordination agreement (the "<u>Subordination Agreement</u>") among the holders of the Last Out Loans and the other Prepetition ABL Lenders, the holders of the Last Out Loans shall be entitled to retain all such payments of interest and fees, without any obligation to turn over same to or for the benefit of the other Prepetition ABL Lenders; provided, however, that the Prepetition ABL Lenders shall cease to be bound by the agreements described in this sentence (excluding this proviso and the subsequent provisos to this sentence) in the event both (x) the Plan Support Agreement terminates or an event of default occurs under the DIP Facility that is not cured or waived and (y) the Prepetition ABL Lenders (other than the Last Out Lenders) elect to cease to be bound by the agreements described in this sentence (excluding this proviso and the subsequent provisos to this sentence); provided, further, that to the extent the Prepetiton ABL Lenders |

make such election, all parties rights are reserved notwithstanding the entry of the DIP Order or anything otherwise set forth herein; provided, further that all payments of interest and fees made prior to any such election shall not be subject to turn over. Except as expressly set forth in the preceding sentence, the Subordination Agreement shall remain in full force and effect. Subject to the terms of the Intercreditor Agreement, the Prepetition ABL Lenders may seek further or additional adequate protection at any time.

The agents and the lenders under the Term Loan Agreement (the "Prepetition Term Lenders" (which for avoidance of doubt shall exclude such persons in their capacity as holders of 'Last Out Loans" under (and as defined in) the ABL Credit Agreement) shall receive valid, binding, enforceable and perfected replacement liens upon and security interests in the DIP Collateral (the "Prepetition Term Loan Replacement Lien"). The Prepetition Term Loan Replacement Lien shall (i) be subject in all respects to the Intercreditor Agreement, (ii) be junior and subordinate only to the Carve-Out and the, DIP Liens and (iii) otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral (other than the ABL Priority Collateral (as defined in the Intercreditor Agreement) and the Prepetition ABL Replacement Liens on collateral consisting of ABL Priority Collateral). For avoidance of doubt, the Prepetition Term Loan Replacement Lien on ABL Priority Collateral shall be junior to the prepetition liens of the Prepetition ABL Lenders and the Prepetition ABL Replacement Lien thereon. As further adequate protection, the Prepetition Term Lenders shall be entitled to accrue postpetition interest (at the applicable non-default rate) during the Chapter 11 Cases, and such accrued postpetition interest will be added to the principal balance of their claims under the Term Loan Credit Agreement; provided, however, that if the Plan is not consummated, then the postpetition interest claim shall be treated in accordance with Section 506(b), 506(c) or any other applicable provision of the Bankruptcy Code. As further adequate protection, the Borrowers shall pay, from the Initial DIP Draw and on the date of the Initial DIP Draw, the outstanding prepetition fees and expenses of (1) counsel to the Specified Term Lenders and (2) counsel and financial advisors to Cerberus Business Finance, LLC, in its capacity as successor administrative agent under the Term Loan Credit Agreement (the "Term Agent") and, following the Petition Date, shall, on a monthly basis, pay the accrued fees and expenses of counsel to the Specified Term Lenders and counsel to the Term Agent with any remaining unpaid postpetition fees or expenses paid on the effective date of the Plan. Subject to the Intercreditor Agreement, the Prepetition Term Lenders and the Term Agent may seek further or additional adequate protection at any time.

| | |
|---|---|
| **Conditions to Closing** | The conditions precedent to the DIP Closing Date include the usual and customary conditions for financings of this type, including, among other things, delivery of financing documentation, payment of fees and expenses, governmental and third-party approvals, the receipt by the DIP Lenders of a copy of the Budget and the 13-Week Forecast, both in form and substance satisfactory to Apollo and the Specified Term Lenders, the entry of an interim order (the "Interim Order") satisfactory to Apollo and the Specified Term Lenders, which shall not be stayed, reversed, vacated or amended, |

| | |
|---|---|
| | receipt by the DIP Lenders of all first day motions, which must be acceptable to Apollo and the Specified Term Lenders, and closing of the DIP Facility within 5 days following entry of the Interim Order. |
| | The conditions precedent to all borrowings include customary notice of borrowing, no default or event of default under the DIP Facility, accuracy of representations and warranties in all material respects, compliance with the Budget, and entry of the applicable DIP Orders, which shall not be stayed, reversed, vacated or amended. |
| **Representations and Warranties** | Customary and appropriate representations and warranties for debtor-in-possession financings, including without limitation representations and warranties that all necessary court authorizations are in full force and effect and shall not have been vacated, stayed, reversed, modified or amended. |
| **Affirmative Covenants** | Affirmative and reporting covenants will be in substantially the same form as exists under the ABL Credit Agreement and such additional affirmative covenants as are customary and appropriate for a debtor-in-possession financing, including without limitation delivery to the DIP Lenders on a weekly basis of any amendments to the Budget and the Budget Variance (as defined below), and delivery to DIP Lenders of (and consultation with Apollo and the Specified Term Lenders on) all other material pleadings to be filed in the Chapter 11 Cases. |
| **Negative Covenants** | Customary and appropriate negative covenants for debtor-in-possession financings, including, without limitation, restrictions on liens, indebtedness, consolidation or merger, disposition, affiliate transactions, dividends and distributions and other restricted payments, investments, sale and leaseback, changes in nature of the business, and amendments to governing documents, modification of indebtedness and cash management system (to be maintained in substantially the same form as required under the ABL Credit Agreement). |
| **Financial Covenants** | Customary and appropriate financial covenants for debtor-in-possession financings (including variances and cushions) to be mutually agreed upon. |
| **Budget** | The budget shall be prepared and delivered by the Borrowers on or prior to the DIP Closing Date and shall reflect projected receipts and expenditures on a weekly basis from the DIP Closing Date for the 13-week period (the "13-Week Forecast") following the DIP Closing Date, and shall be in form and substance acceptable to Apollo and the Specified Term Lenders, and shall be updated each week pursuant to amendments thereto as approved by Apollo and the Specified Term Lenders (such budget, as so amended, the "Budget"). The Borrowers shall deliver on a weekly basis to the DIP Lenders a variance report comparing receipts and expenditures to the Budget for the rolling 13-week period immediately following the date of each such delivery (a "Budget Variance"). |
| **Certain Documentation Matters** | This Term Sheet is a summary of certain, but not all, of the material terms to be contained in the definitive documentation with respect to the DIP Facility. The actual terms and conditions upon which the DIP Lenders would enter |

| | |
|---|---|
| | into the DIP Facility are subject to negotiation, execution and delivery of definitive DIP Loan Agreement and related documentation (the "DIP Documentation"), acceptable in all respects to the DIP Lenders in their sole discretion, corporate approvals and such other terms and conditions as may be determined by the DIP Lenders. The representations, warranties, covenants and events of default with respect to the Borrowers set forth in the DIP Documentation shall be generally consistent with the ABL Credit Agreement documentation as amended to the extent necessary to reflect this Term Sheet and the facts and circumstances of the Chapter 11 Cases or desirable in the judgment of Apollo and the Specified Term Lenders. |
| **Events of Default** | Customary and appropriate for debtor-in-possession financings, including, without limitation, non-payment of principal, interest and fees when due, failure to comply with the terms of the Budget, default under affirmative, negative and financial covenants, breaches of representations and warranties, default as to other indebtedness, invalidity or impairment of documents, judgments, change of control, ERISA events, failure of guaranty or lack of security interest, dismissal or conversion of the Chapter 11 Cases or appointment of a chapter 11 trustee or an examiner or similar insolvency official or administrator with expanded powers, allowance of superpriority claims *pari passu* with the Superpriority Claims, non-entry of Interim Order or Final Order in form and substance satisfactory to Apollo and the Specified Term Lenders, the failure of the Borrowers to obtain a final order from the Bankruptcy Court reasonably satisfactory in form and substance to Apollo and the Specified Term Lenders authorizing the DIP Facility (the "Final Order"; together with the Interim Order, the "DIP Orders") within 30 days after the Petition Date, filing by any Loan Party of a motion or pleading seeking to reverse, amend, stay or vacate the Interim Order or the Final Order or challenge the DIP Facility documentation, or consent by any Loan Party to any such motion or pleading filed by any other person, relief from the automatic stay with respect to the DIP Collateral or with respect to the exercise of termination rights under any material contract, the surcharge of any costs or expenses against the DIP Collateral, non-compliance with the Interim Order or Final Order, modification or reversal of the Interim Order or the Final Order without the consent of Apollo and DIP Lenders holding a majority of the funded and unfunded exposure under the DIP Facility (the "Required DIP Lenders"), payment of prepetition liabilities without the consent of the Required DIP Lenders other than as set forth in the first day motions, sale of assets outside the ordinary course of business without the consent of the Required DIP Lenders, filing or court approval of any plan of reorganization without consent of Apollo and the Specified Term Lenders, receipt by the Borrowers of notice under the Plan Support Agreement (as defined below) of the occurrence of any "PSA Termination Event" (as defined in the Plan Support Agreement), or delivery of notice by the DIP Agent or any DIP Lender to the Borrowers of any such occurrence (with a two business day cure period), the failure of the Plan Support Agreement to remain in full force and effect, the termination of the HSP Agreement (as defined in the Plan Support Agreement) or the issuance by DIRECTV of an HSP Termination Notice (as defined in the Plan Support Agreement), and any amendment, modification or supplement to the Plan Support Agreement |

| | that is adverse in any respect to the interests of the DIP Lenders. |
|---|---|
| **Amendments** | Amendments and waivers will require the approval of Required DIP Lenders; provided that (i) the consent of each adversely affected Lender will be required with respect to, among other things, increases in the commitment of such DIP Lender, reductions of principal, interest or fees or delays in the scheduled payment date therefor, releases of the Borrowers or the other Debtors of their respective obligations or release of all or substantially all of the DIP Collateral; and (ii) the consent of all DIP Lenders shall be required to effect any amendment with respect to interest rates on, or maturity of the DIP Facility or the definition of Required DIP Lenders. |
| **Payment of Professional Fees** | The Borrowers will pay on a current basis all reasonable and documented costs, fees and out of pocket expenses of the DIP Agent and the DIP Lenders and advisors to the DIP Agent and DIP Lenders, including costs, fees and expenses incurred in connection with the negotiation and documentation of the DIP Facility, and shall reimburse the DIP Agent and the DIP Lenders and such advisors for such other costs and expenses provided for in the DIP Loan Agreement. |
| **Waivers** | The DIP Orders shall provide customary waivers, including the waiver of the automatic stay in connection with the DIP Agent's and DIP Lenders' enforcement of remedies upon an event of default under the DIP Facility, the waiver of any surcharge of costs or expenses under section 506(c) of the Bankruptcy Code, the waiver of any right to marshalling, and the waiver of the "equities of the case" exception under section 552(b) of the Bankruptcy Code. |
| **Stipulations. etc.** | Pursuant to the DIP Orders, the Debtors shall provide customary stipulations as to the validity and priority of the DIP Facility and the Prepetition Secured Credit Agreements, it being understood that such stipulations shall be subject to a customary challenge period after the Petition Date by the Committee (if any).  The DIP Documentation shall not supersede the existing subordination agreement entered into with respect to the "Last Out Loans" (as defined in the ABL Credit Agreement) or the existing intercreditor agreement entered into with respect to the Prepetition Secured Credit Agreements. |
| **Release** | Pursuant to the Final Order, the Debtors shall release all claims against (i) the lenders and agents under the Prepetition Secured Credit Agreements, and (ii) the DIP Agent and the DIP Lenders in connection with any claim arising out of this Term Sheet or the DIP Facility. |

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| UNITEK GLOBAL SERVICES, INC.,<br>a Delaware Corporation, *et al.*[1] | Case No. 14- _____ (___) |
| Debtors. | (Joint Administration Requested) |

## CONSOLIDATED LIST OF CREDITORS
## HOLDING 30 LARGEST UNSECURED CLAIMS

UniTek Global Services, Inc., a Delaware corporation, and certain of its affiliates, the debtors and debtors in possession in the above captioned cases (the "Debtors") have each filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"). This list of creditors holding the 30 largest unsecured claims (the "Top 30 List") has been prepared on a consolidated basis, from the Debtors' books and records as of October 25, 2014

The Top 30 List was prepared in accordance with rule 1007(d) of the Federal Rules of Bankruptcy Procedure for filing in the Debtors' chapter 11 cases. The Top 30 List does not include: (1) persons who come within the definition of an "insider" set forth in 11 U.S.C. § 101(31); or (2) secured creditors, unless the value of the collateral is such that the unsecured deficiency places the creditor among the holders of the 30 largest unsecured claims. The information presented in the Top 30 List shall not constitute an admission by, nor is it binding on, the Debtors. The information presented herein, including, without limitation (a) the failure of the Debtors to list any claim as contingent, unliquidated, disputed or subject to a setoff, or (b) the listing of any claim as unsecured, does not constitute an admission by the Debtors that the secured lenders listed hold any deficiency claims, nor does it constitute a waiver of the Debtors' rights to contest the validity, priority, nature, characterization and/or amount of any claim.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: UniTek Global Services, Inc. (3445), UniTek Holdings, Inc. (4120), UniTek Midco, Inc. (5642), UniTek Acquisition, Inc. (4123), Nex-link USA Communications, Inc. (9084), UniTek USA, LLC (0279), Pinnacle Wireless USA, Inc. (1746), DirectSAT USA, LLC (3465), FTS USA, LLC (6247), Advanced Communications USA, Inc. (0091). For the avoidance of doubt, Wirecomm Systems (2008) Inc. (FKA UniTek Canada), an affiliate of the Debtors and wholly owned subsidiary of UniTek USA, LLC, is not a Debtor in the chapter 11 cases. The Debtors' main corporate address is 1777 Sentry Parkway West, Gwynedd Hall, Suite 302, Blue Bell, Pennsylvania 19422.

| | Name of Creditor | Complete Mailing Address of Creditor Including Zip Code and Contact Person with Fax Number | Nature of Claim (trade, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim |
|---|---|---|---|---|---|
| 1. | DIRECTV | DIRECTV<br>ATTN: Stacie Saito<br>P.O. Box 100455<br>Pasadena, CA 91189-0455<br>Tel: 310-964-4398<br>Email: SASaito@DIRECTV.COM | Trade | Contingent; Unliquidated; Subject to set-off | 7,614,520 |
| 2. | EDWARD MONROE | EDWARD MONROE<br>ATTN: Anna P Prakash, Esq<br>4600 IDS Center, 80 So. 8th St.<br>Minneapolis, MN 55402<br>Tel: 612-256-3200<br>Email: aprakash@nka.com | Litigation | Contingent; Unliquidated; Disputed | 5,000,000 |
| 3. | SKYLINK LTD. | SKYLINK LTD.<br>ATTN: Jennifer R. Hoover, Esquire<br>Benesch, Friedlander, Coplan & Aronoff LLP<br>222 Delaware Avenue, Suite 801<br>Wilmington, DE 19801<br>Tel: 302-442-7006<br>Fax: 302-442-7012<br>Email: jhoover@beneschlaw.com | Transaction | Contingent; Unliquidated; Disputed | 1,950,000[1] |
| 4. | AUTOMOTIVE RENTALS INC | AUTOMOTIVE RENTALS INC<br>ATTN: Will Thomas<br>4001 Leadenhall Road<br>Mt Laurel, NJ 08054<br>Tel: 856-778-1500<br>Email: WThomas@arifleet.com | Equipment Lease | | 1,049,634 |
| 5. | FOX ROTHSCHILD LLP | FOX ROTHSCHILD LLP<br>ATTN: Colin Dougherty<br>P. O. Box 3001<br>Blue Bell, PA 19422<br>Tel: 610-397-3908<br>Email: cdougherty@foxrothchild.com | Professional Fee | Unliquidated | 795,795 |
| 6. | VERIZON WIRELESS | VERIZON WIRELESS<br>ATTN: Chinela Davis<br>175 Calkins Road<br>Rochester, NY 14623<br>Tel: 800-811-6200 x1072438<br>Email: chinela.davis@verizon.com | Trade | Unliquidated | 637,446 |
| 7. | GALLANT FOX ELECTRIC CORPORATION | GALLANT FOX ELECTRIC CORPORATION<br>ATTN: Rubert Mancini<br>27 West 20th St, Suite 703<br>New York, NY 10011<br>Tel: 212-255-2355<br>Fax: 718-581-0775 | Trade | | 555,535 |

---

[1] Disputed and unliquidated unsecured claim but pursuant to a settlement, Debtors have agreed to pay $1.2 million in cash and $750,000 in a note on or before 12/31/2014.

| | Name of Creditor | Complete Mailing Address of Creditor Including Zip Code and Contact Person with Fax Number | Nature of Claim (trade, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim |
|---|---|---|---|---|---|
| 8. | RYDER TRANSPORTATION SERVICES | RYDER TRANSPORTATION SERVICES ATTN: Steve Zeady, VP Maintenance Solutions 11690 NW 105th Street Miami, FL 33178 Tel: 305-500-3906 Email: szeady@ryder.com | Trade | Unliquidated | 496,394 |
| 9. | BARONS UTILITIES CORP | BARONS UTILITIES CORP ATTN: Sandra L. Garling 90 Harts Lane Albany, NY 12204 Tel: 518-456-8114 Email: sgarling@baroncompanies.com | Trade | | 469,810 |
| 10. | WINMARK CAPITAL CORPORATION | WINMARK CAPITAL CORPORATION ATTN: Steven C. Zola 605 Highway 169 N. Suite 400 Minneapolis, MN 55441 Tel: 805-966-3500 x11 Email: szola@winmarkcorporation.com | Equipment Lease | Disputed | 437,307 |
| 11. | NORTHEAST TOWERS INC | NORTHEAST TOWERS INC ATTN: Jim Wicks 199 Brickyard Rd Farmington, CT 06032 Tel: 860-677-1999 Email: jim@northeasttowers.com | Trade | | 403,135 |
| 12. | ORACLE AMERICA, INC | ORACLE AMERICA, INC ATTN: Kushal Shriyan P. O. Box 203448 Dallas, TX 75320 Tel: 91-804-065-6998 (India) Email: kushal.shriyan@oracle.com | Trade | | 353,382 |
| 13. | WIRELESS CONSTRUCTION SOLUTIONS LLC | WIRELESS CONSTRUCTION SOLUTIONS LLC ATTN: Matthew T. Libous 190 Bedford Ave, Suite 418 Brooklyn, NY 11249 Tel: 917-273-4542 Email: mlibous@wcsnys.com | Trade | | 267,045 |
| 14. | TRIMBLE NAVIGATION LIMITED | TRIMBLE NAVIGATION LIMITED ATTN: Alvin Tam Dept 33209 P. O. Box 39000 San Francisco, CA 94139 Tel: 408-456-6631 Email: Alvin_Tam@trimble.com | Trade | Unliquidated | 262,048 |

| | Name of Creditor | Complete Mailing Address of Creditor Including Zip Code and Contact Person with Fax Number | Nature of Claim (trade, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim |
|---|---|---|---|---|---|
| 15. | EXTENDED STAY HOTELS | EXTENDED STAY HOTELS ATTN: LaToya Potts P. O. Box 49289 Charlotte, NC 28277 Tel: 980-345-1936 Email: lpotts@extendedstay.com | Trade | Unliquidated | 254,813 |
| 16. | HUTTON COMMUNICATIONS | HUTTON COMMUNICATIONS ATTN: Linda Bradshaw, AR 1430 Jersey Ave North Brunswick, NJ 08902 Tel: 972-417-0131 Email: BradshawL@HUTTONCOM.COM | Trade | | 223,063 |
| 17. | AMERICAN TOWER CORPORATION | AMERICAN TOWER CORPORATION ATTN: Joshua Peters Lock Box 7501 P. O. Box 7247 Philadelphia, PA 19170 Tel: 781-926-4644 Email: joshua.peters@americantower.com | Trade | Unliquidated | 217,712 |
| 18. | GREAT LAKES AERIAL MAINTENANCE AND CONSTRUCTION CO., INC. | GREAT LAKES AERIAL MAINTENANCE AND CONSTRUCTION CO., INC. ATTN: Bill Bossides 8710 North Custer Rd Monroe, MI 48162 Tel: 734-868-0130 Email: bill@greatlakesaerial.com | Trade | | 215,500 |
| 19. | SKY KING | SKY KING ATTN: Wei Xiang Li 1532 Montana Drive Downingtown, PA 19335 Tel: 484-802-2000 Email: weixiangli82@yahoo.com | Subcontractor | Unliquidated | 215,221 |
| 20. | GRANT THORNTON LLP | GRANT THORNTON LLP ATTN: Nidhl Desai 2001 Market St. Two Commerce Sq Philadelphia, PA 19103 Tel: 215-531-8763 Email: nidhi.desai@us.gt.com | Professional Fee | | 175,000 |

| | Name of Creditor | Complete Mailing Address of Creditor Including Zip Code and Contact Person with Fax Number | Nature of Claim (trade, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim |
|---|---|---|---|---|---|
| 21. | VALMONT SITE PRO 1 | VALMONT SITE PRO 1<br>ATTN: Margaret Madden<br>7239 Collections Center Drive<br>Chicago, IL 60693<br>Tel: 404-494-9000<br>Email: margaret.madden@valmont.com | Trade | | 153,443 |
| 22. | CEI GROUP INC, THE | CEI GROUP INC, THE<br>ATTN: Terri Brigidi<br>4850 Street Road, Suite 200<br>Trevose, PA 19053<br>Tel: 215-485-4318<br>Email: terri.brigidi@ceinetwork.com | Trade | | 152,915 |
| 23. | INDUSTRIAL CONTROL DISTRIBUTORS INC | INDUSTRIAL CONTROL DISTRIBUTORS INC<br>ATTN: David Gutierrez<br>17 Christopher Way<br>Eatontown, NJ 07724<br>Tel: 732-918-9000 x5239<br>Email: dgutierrez@icdmail.com | Trade | Unliquidated | 148,200 |
| 24. | NEW BOSTON PRISM HACKENSACK-20119 | New Boston Prism Hackensack-20119<br>ATTN: Gary Hofstetter<br>200 Broadacres Drive<br>Bloomfield, NJ 07003<br>Tel: 201-567-2711<br>Email:lease.admin@prismpropertyservices.net | Rent | Contingent; Unliquidated; Disputed | 144,278 |
| 25. | COMDATA | COMDATA<br>ATTN: Victoria Hardy<br>5301 Maryland Way<br>Brentwood, TN 37027<br>Tel: 615-370-7361<br>Email: vhardy@comdata.com | Trade | Unliquidated | 141,880 |
| 26. | NX UTILITIES LLC | NX UTILITIES LLC<br>ATTN: Paul T. Kestenbaum, General Counsel<br>1150 1st Avenue, Suite 600<br>King of Prussia, PA 19406<br>Tel: 484-804-4504<br>Email: pkestenbaum@qualtekservices.com | Transaction | Contingent; Unliquidated; Disputed; Subject to set-off | 138,145 |
| 27. | MEXUS INC | MEXUS INC<br>ATTN: Mark Morales<br>3208 S Hoyne Avenue<br>Chicago, IL 60608<br>Tel: 773-685-5353<br>Email: markmorales@cableconceptscorp.com | Subcontractor | Unliquidated | 133,696 |

01:15862330.1

5

|  | Name of Creditor | Complete Mailing Address of Creditor Including Zip Code and Contact Person with Fax Number | Nature of Claim (trade, bank loan, government contract, etc.) | Indicate if Claim is contingent, unliquidated, disputed or subject to set-off | Amount of Claim |
|---|---|---|---|---|---|
| 28. | SBA COMMUNICATIONS CORPORATION | SBA COMMUNICATIONS CORPORATION ATTN: Jolie H Hasson 5900 Broken Sound Parkway NW Boca Raton, FL 33487 Tel: 561-226-9364 Email: jhasson@sbasite.com | Trade |  | 130,212 |
| 29. | PCTELWORX INC | PCTELWORX INC ATTN: Katie Magrone 12955 Collections Center Drive Chicago, IL 60693 Tel: 630-233-8085 Email: Katie.Magrone@pctel.com | Trade |  | 123,386 |
| 30. | SUNBELT RENTALS INC | SUNBELT RENTALS INC ATTN: Naioki Oxendine 1275 W Mound St Columbus, OH 43223 Tel: 614-232-2029 Email: naioki.oxendine@sunbelt.com | Trade |  | 122,299 |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| UNITEK GLOBAL SERVICES, INC., | ) | Case No. 14-_____(___) |
| a Delaware Corporation, *et al.*[1] | ) |  |
|  | ) | (Joint Administration Requested) |
| Debtors. | ) |  |
|  | ) |  |

## DECLARATION REGARDING CONSOLIDATED LIST OF CREDITORS
## HOLDING 30 LARGEST UNSECURED CLAIMS

I, Andrew J. Herning, Chief Financial Officer of UniTek Global Services, Inc.,

one of the above-captioned debtors and debtors in possession (each a "Debtor" and collectively,

the "Debtors"), declare under penalty of perjury under the laws of the United States of America

that I have reviewed the foregoing Consolidated List of Creditors Holding 30 Largest Unsecured

Claims and that the information contained therein is true and correct to the best of my

information and belief.

Dated: November 3, 2014

By: _____
       Andrew J. Herning
       Chief Financial Officer of UniTek Global
       Services, Inc. on behalf of the Debtors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: UniTek Global Services, Inc. (3445), UniTek Holdings, Inc. (4120), UniTek Midco, Inc. (5642), UniTek Acquisition, Inc. (4123), Nex-link USA Communications, Inc. (9084), UniTek USA, LLC (0279), Pinnacle Wireless USA, Inc. (1746), DirectSAT USA, LLC (3465), FTS USA, LLC (6247), Advanced Communications USA, Inc. (0091). For the avoidance of doubt, Wirecomm Systems (2008) Inc. (FKA UniTek Canada), an affiliate of the Debtors and wholly owned subsidiary of UniTek USA, LLC, is not a Debtor in the chapter 11 cases. The Debtors' main corporate address is 1777 Sentry Parkway West, Gwynedd Hall, Suite 302, Blue Bell, Pennsylvania 19422.

01:15862330.1

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| UNITEK GLOBAL SERVICES, INC., | ) | Case No. 14- _____(___) |
| a Delaware Corporation, *et al.*[1] | ) | |
| | ) | (Joint Administration Requested) |
| Debtors. | ) | |
| | ) | |

## DEBTORS' CONSOLIDATED CORPORATE OWNERSHIP STATEMENT
## PURSUANT TO RULES 1007(a) AND 7007.1 OF THE
## FEDERAL RULES OF BANKRUPTCY PROCEDURE

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy

Procedure, UniTek Global Services, Inc., a Delaware corporation, and certain of its direct and

indirect subsidiaries, who are each debtors and debtor-in-possession in the above-captioned cases

(each a "Debtor"), hereby state as follows:

       1.       The following table is a list of names and addresses of any person who,

based upon information provided to the Debtors, directly or indirectly owns, controls, or holds

with power to vote, 5% or more of the voting securities of UniTek Global Services, Inc. as of

October 30, 2014.

| Name and Last Known Address of Holder | Approximate Percentage of Ownership |
|---|---|
| UniTek Interposed LP<br>c/o HMK GP LP<br>200 Crescent Court<br>Suite 1600<br>Dallas, TX 75201 | 24.2% |

---

[1]  The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: UniTek Global Services, Inc. (3445), UniTek Holdings, Inc. (4120), UniTek Midco, Inc. (5642), UniTek Acquisition, Inc. (4123), Nex-link USA Communications, Inc. (9084), UniTek USA, LLC (0279), Pinnacle Wireless USA, Inc. (1746), DirectSAT USA, LLC (3465), FTS USA, LLC (6247), Advanced Communications USA, Inc. (0091). For the avoidance of doubt, Wirecomm Systems (2008) Inc. (FKA UniTek Canada), an affiliate of the Debtors and wholly owned subsidiary of UniTek USA, LLC, is not a Debtor in the chapter 11 cases. The Debtors' main corporate address is 1777 Sentry Parkway West, Gwynedd Hall, Suite 302, Blue Bell, Pennsylvania 19422.

01:15861972.1

| David Sandberg<br>304 Park Avenue South<br>11th Floor<br>New York, NY 10010 | 10.5% |
|---|---|
| John Randall Waterfield<br>140 Broadway<br>46th Floor<br>New York, NY 10005 | 9.3% |
| Cetus Capital II, LLC<br>8 Sound Shore Drive<br>Suite 303<br>Greenwich, CT 06830 | 5.9% |
| Steven B. Klinsky<br>767 Seventh Avenue<br>New York, NY 10019 | 5.3% |

2.      UniTek Global Services, Inc., whose address is Gywnedd Hall, Suite 302, 1777 Sentry Parkway West, Blue Bell, PA 19422, is the sole stockholder of Debtor UniTek Holdings, Inc.

3.      UniTek Holdings, Inc., whose address is Gywnedd Hall, Suite 302, 1777 Sentry Parkway West, Blue Bell, PA 19422, is the sole stockholder of Debtor UniTek Midco, Inc.

4.      UniTek Midco, Inc., whose address is Gywnedd Hall, Suite 302, 1777 Sentry Parkway West, Blue Bell, PA 19422, is the sole stockholder of Debtor UniTek Acquisition, Inc.

5.      UniTek Acquisition, Inc., whose address is Gywnedd Hall, Suite 302, 1777 Sentry Parkway West, Blue Bell, PA 19422, is the sole stockholder or member, as applicable, of:

(a) Nex-link USA Communications, Inc.;

(b) UniTek USA, LLC; and

(c) Pinnacle Wireless USA, Inc.

6.    UniTek USA, LLC, whose address is Gywnedd Hall, Suite 302, 1777 Sentry Parkway West, Blue Bell, PA 19422, is the sole stockholder or member, as applicable, of:

(a) DirectSAT USA, LLC;

(b) FTS USA, LLC; and

(c) Advanced Communications USA, Inc.

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|                                                              |     |                                     |
| ------------------------------------------------------------ | --- | ----------------------------------- |
| In re:                                                       | )   | Chapter 11                          |
|                                                              | )   |                                     |
| UNITEK GLOBAL SERVICES, INC.,                                | )   | Case No. 14-_____(___)            |
| a Delaware Corporation, *et al.*[1]                          | )   |                                     |
|                                                              | )   | (Joint Administration Requested)    |
| Debtors.                                                     | )   |                                     |
|                                                              | )   |                                     |

### DECLARATION REGARDING DEBTORS' CONSOLIDATED CORPORATE OWNERSHIP STATEMENT PURSUANT TO RULES 1007(a) AND 7007.1 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE

I, Andrew J. Herning, Chief Financial Officer of UniTek Global Services, Inc., one of the above-captioned debtors and debtors in possession (each a "Debtor" and collectively, the "Debtors"), declare under penalty of perjury under the laws of the United States of America that I have reviewed the foregoing Debtors' Consolidated Corporate Ownership Statement Pursuant to Rules 1007(a) and 7007.1 of the Federal Rules of Bankruptcy Procedure and that the information contained therein is true and correct to the best of my information and belief.

Dated: November 3, 2014

By: _Andrew J. Herning_

Andrew J. Herning
Chief Financial Officer of UniTek Global
Services, Inc. on behalf of the Debtors

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal taxpayer-identification number, are: UniTek Global Services, Inc. (3445), UniTek Holdings, Inc. (4120), UniTek Midco, Inc. (5642), UniTek Acquisition, Inc. (4123), Nex-link USA Communications, Inc. (9084), UniTek USA, LLC (0279), Pinnacle Wireless USA, Inc. (1746), DirectSAT USA, LLC (3465), FTS USA, LLC (6247), Advanced Communications USA, Inc. (0091). For the avoidance of doubt, Wirecomm Systems (2008) Inc. (FKA UniTek Canada), an affiliate of the Debtors and wholly owned subsidiary of UniTek USA, LLC, is not a Debtor in the chapter 11 cases. The Debtors' main corporate address is 1777 Sentry Parkway West, Gwynedd Hall, Suite 302, Blue Bell, Pennsylvania 19422.

01:15861972.1